UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| In re:<br><br>1 GLOBAL CAPITAL LLC, et al.,<br><br>             Debtors.<br><br>-----------------------------------------------------------<br>1 GLOBAL CAPITAL LLC,<br><br>             Plaintiff,<br><br>v.<br><br>HILLSBOROUGH RIVER PHARMACY, INC.<br>and AMBROSE CHUKWUEKE,<br><br>             Defendants. | Chapter 11<br><br>Case No: 18-19121-RBR<br>(Jointly Administered)<br><br><br>Adv. Case No. 19-01636-RAM |

## MOTION TO VACATE DEFAULT FINAL JUDGMENT [ECF #19]

Hillsborough River Pharmacy, Inc. ("Hillsborough") and Ambrose Uba Chukwueke ("Chukwueke"; collectively with Hillsborough, the "Defendants"), by and through undersigned counsel, pursuant to Federal Rule of Bankruptcy Procedures 9024, Federal Rule of Civil Procedure 60(b), and 11 U.S.C. Section 105(a), hereby file this Motion to Vacate Default Final Judgment (the "Motion"). In support of this Motion, the Defendants submit the Affidavit of Chukwueke (the "*Affidavit*"), along with the exhibits attached hereto.

### FACTUAL AND PROCEDURAL BACKGROUND

1.     1 Global Capital LLC (the "Plaintiff" and/or the "Debtor") seeks to recover funds totaling $30,030.00 (the "Loan Amount") allegedly paid by it to Hillsborough pursuant to a Merchant Agreement (the "Merchant Agreement").

1

**The Merchant Agreement**

2. On or about May 20, 2016, Hillsborough executed the Merchant Agreement attached as Exhibit A to the Complaint. The counter-party to the Merchant Agreement is the Debtor. *See Affidavit.* ¶4.

3. Under the Merchant Agreement, Hillsborough was supposed to receive $30,000.00 (the "Loan Amount") from the Debtor. *See Affidavit.* ¶5.

4. However, Hillsborough never received the Loan Amount from the Debtor. *See Affidavit.* ¶6.

**The Confession of Judgment**

5. On or about May 20, 2016, Chukwueke executed the Affidavit of Confession of Judgment (the "Confession of Judgment") attached as part of Exhibit A to the Complaint. The Confession of Judgment is dated May 20, 2015, which is erroneous. *See Affidavit.* ¶7.

6. On information and belief, the Confession of Judgment was never filed with the Supreme Court Of The State Of Florida. *See Affidavit.* ¶8.

**The Hillsborough Bankruptcy**

7. On or about July 30, 2016, Hillsborough filed a voluntary petition under Chapter 11 of the U.S. Bankruptcy Code in the U.S. Bankruptcy Court for the Middle District of Florida. The bankruptcy case is *In re: Hillsborough River Pharmacy, Inc.* Bankruptcy Case No. 16-bk-06579-RCT (the "Hillsborough Proceeding"). *See Affidavit.* ¶9.

8. Hillsborough's counsels at the time, Suzy Tate and Chris Broussard of the law firm Suze Tate, P.A. (the "Tate Firm"), prepared a Chapter 11 Plan[1] and Disclosure Statement[2] that erroneously recognized the existence of a secured claim in favor of the Debtor. As stated above,

---

[1] ECF #45 of the Hillsborough Proceeding.
[2] ECF #46 of the Hillsborough Proceeding.

Hillsborough never received the Loan Amount. The Chapter 11 Plan and Disclosure Statement were filed on November 18, 2016. *See Affidavit.* ¶10.

9. On or about February 8, 2017, the Tate Firm compounded their error by executing a stipulation with the Debtor which allowed a secured claim in the amount of $42,175.00 in the Debtor's favor (the "Stipulation").[3] A copy of the Stipulation is attached as <u>Exhibit A</u> to the *Affidavit*. *See Affidavit.* ¶11.

10. On March 3, 2017, Hillsborough's Chapter 11 Plan was confirmed.[4] A copy of the order confirming the Chapter 11 Plan (the "Confirmation Order") is attached as <u>Exhibit B</u> to the *Affidavit*. Pages 3 and 4 of the Confirmation Order incorporated the terms of the Stipulation into the Chapter 11 Plan. *See Affidavit.* ¶12.

11. Pursuant to the Chapter 11 Plan and the Stipulation, Hillsborough paid the Debtor $14,840.00 as set forth in following table:

| Date | Check Number | Amount |
| --- | --- | --- |
| 04/28/2017 | 1101 | $1,855.00 |
| 06/16/2017 | 1123 | $1,855.00 |
| 08/09/2017 | 1141 | $1,855.00 |
| 10/24/2017 | 1182 | $1,855.00 |
| 01/19/2018 | 1225 | $1,855.00 |
| 03/26/2018 | 1283 | $1,855.00 |
| 08/23/2018 | 1269 | $1,855.00 |
| 12/07/2018 | 1304 | $1,855.00 |

*See Affidavit.* ¶13.

**This present Adversary Proceeding**

12. On or about September 27, 2019, the Plaintiff commenced the above-captioned adversary proceeding against Hillsborough and Chukwueke. *See Affidavit.* ¶14.

---

[3] ECF #72 of the Hillsborough Proceeding.
[4] ECF #77 of the Hillsborough Proceeding.

13. On or about October 5, 2019, Chukwueke received process and brought it to the attention of Mr. Michael A. Saracco, Esq., who was Hillsborough's and his lawyer at the time. *See Affidavit*. ¶15.

14. Unbeknownst to Chukwueke, Mr. Saracco failed to take timely action. *See Affidavit*. ¶16.

15. On or about January 21, 2020, the Clerk entered a default against Hillsborough and Chukwueke [ECF #11]. *See Affidavit*. ¶17.

16. On or about January 24, 2020, after having received notice of the Clerk's entry of default [ECF #11], Chukwueke wrote a letter to the Plaintiff's counsel, Mr. Jonathan Feldman (the "January Letter"). In that letter, Chukwueke explained his confusion about the notices received from the Court and his defenses against the Plaintiff's claims. He specifically denied receipt of the Loan Amount. A copy of the January Letter and the e-mail transmitting it to Mr. Feldman is attached as Exhibit C to the *Affidavit*. *See Affidavit*. ¶18.

17. On or about January 24, 2020, Mr. Saracco reached out via e-mail to Mr. Feldman and requested a week's extension to respond to the entry of default. A copy of the relevant e-mail chain is attached as Exhibit D to the *Affidavit*. *See Affidavit*. ¶19.

18. On or about January 27, 2020, Chukwueke himself reached out to Mr. Feldman. He was under the impression that, having previously notified Mr. Saracco of the adversary proceeding, neither he nor Hillsborough could have defaulted. *See Affidavit*. ¶20.

19. On that same day, Mr. Feldman informed both Chukwueke and Mr. Saracco that they had to seek to vacate the Clerk's default. However, it appears that Mr. Saracco again failed to take timely action on Hillsborough's and Chukwueke's behalf. *See Affidavit*. ¶21.

20. Unfortunately, Chukwueke was under the impression that Mr. Saracco was taking care of the case. He was prevented from paying sufficient attention to the progress of this adversary proceeding because of the constant media reports during the months of February and March about the spread of the COVID-19 virus. He was consumed and distracted by worry of what this seemingly unstoppable pandemic boded for the future of his livelihood and the well-being of his friends and family. *See Affidavit.* ¶22.

21. On March 13, 2020, President Trump declared a national emergency due to the COVID-19 pandemic. Businesses, as well as states, began closing down. *See Affidavit.* ¶23.

22. The fear caused by possible contagion, and the difficulties of keeping a business running during the past three months, kept Chukwueke from following up on the status of this adversary proceeding. Critically, it kept him from finding new counsel to replace Mr. Saracco. *See Affidavit.* ¶24.

23. On or about June 1, 2020, this Court adjudged that Hillsborough and Chukwueke were in default [ECF #19]. *See Affidavit.* ¶25.

24. Chukwueke was only reminded that no action had been taken in this adversary proceeding upon receipt of the Default Final Judgment. *See Affidavit.* ¶26.

25. Hillsborough and Chukwueke will suffer extreme prejudice should the Default Final Judgment stand because the Loan Amount was never received. Neither Chukwueke nor Hillsborough have any obligation to pay the Plaintiff's claim. *See Affidavit.* ¶27.

### **RELIEF REQUESTED**

26. The Defendants respectfully request that this Court: (i) vacate the Default Final Judgment against them [ECF #19]; (ii) reopen this adversary proceeding; and (iii) permit them to file an Answer to the Complaint filed against them by the Plaintiff.

## ARGUMENT

**I.     Legal Standard**

27.     There is a strong policy in favor of determining cases on their merits and defaults are, therefore, viewed with disfavor. *In re Worldwide Web Sys., Inc.*, 328 F.3d 1291, 1295 (11th Cir. 2003). *See also Gulf Coast Fans, Inc. v. Midwest Elecs. Imps., Inc.,* 740 F.2d 1499, 1510-11 (11th Cir.1984); *Seven Elves, Inc. v. Eskenazi,* 635 F.2d 396, 401-02 (5th Cir. Unit A Jan.1981) (discussing Rule 60(b) balancing of the desire to preserve the finality of judgments with the desire that judgments reflect the merits of the case). "The entry of judgment by default is a drastic remedy and should be resorted to only in extreme situations. It is only appropriate where there has been a clear record of delay or contumacious conduct." *United States v. Varmado*, 342 Fed.Appx. 437, 441 (11th Cir. 2009), citing *E.F. Hutton & Co. v. Moffatt,* 460 F.2d 284, 285 (5th Cir.1972).

28.     Federal Rule of Bankruptcy Procedure 9024 allows for relief from judgments for several causes including "excusable neglect" pursuant to Fed. R. Civ. P. 60(b)(1).

29.     Fed. R. Civ. P. 60(b)(1) provides that a judgment may be set aside on grounds of mistake, inadvertence, surprise, or excusable neglect.

**II.     The Defendants Failure to Answer the Plaintiff's Complaint is Excusable**

30.     To establish mistake, inadvertence, or excusable neglect under Rule 60(b)(1), a defaulting party must show that: "(1) it had a meritorious defense that might have affected the outcome; (2) granting the motion would not result in prejudice to the non-defaulting party; and (3) a good reason existed for failing to reply to the complaint." *In re Worldwide Web Sys., Inc.*, 328 F.3d 1291, 1295 (11th Cir. 2003). *See also E.E.O.C. v. Mike Smith Pontiac GMC, Inc.,* 896 F.2d 524, 528 (11th Cir. 1990).

31.     Excusable neglect under Rule 60(b)(1) is generally an "equitable inquiry" based upon the particular circumstances of the case. *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship,* 507 U.S. 380, 395, 113 S.Ct. 1489, 1495, 123 L.Ed.2d 74 (1993). In *Pioneer*, the Court stated that excusable neglect occurs when the failure to comply with a filing deadline is attributable to negligence. *Id.* at 394, 113 S.Ct. at 1497. *See also Connecticut State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1355 (11th Cir. 2009). Within the 11th Circuit, the Courts have historically followed *Pioneer.* Recently, the merits-over-default approach was restated by the 11th Circuit in the *Greenberg* case. In that case, the lawyer involved testified that he did not receive notice, and though perhaps he was on inquiry notice, the Court determined that he had acted in good faith under the circumstances and that he did not exhibit any form of disregard for the judicial process. Therefore, the Circuit Court reversed both the District Court and the Bankruptcy Court decisions and allowed the plaintiff to proceed on the merits. *See In Re Greenberg*, 2006 WL (Slip Opinion) 1594202 (11th Cir. 2006).

**(a)     The Defendants have a Meritorious Defense Because the Loan Amount was Never Received**

32.     The Plaintiff's claim against the Defendants rest upon two (2) documents: the Merchant Agreement and the Confession of Judgment. However, the Defendants never received the Loan Amount. *See Affidavit.* ¶6.

33.     Since the Defendants never received the Loan Amount, the Defendants' obligation to repay the Loan Amount never arose.

34.     In order to collect on its claim, the Plaintiff must first establish that the Debtor conveyed the Loan Amount to Hillsborough.

**(b)   The Defendants have a Meritorious Defense Because Even if the Defendants Received the Loan Amount, the Interest was Usurious**

35.   The Plaintiff characterizes the Merchant Agreement as a purchase and receipt of receivables. However, it is in the nature of a disguised loan with a usurious interest rate.

36.   In Florida, a criminally usurious loan cannot be enforced. § 687.071(7), Fla. Stat. (2017) (specifically declaring unenforceable extensions of credit in excess of certain usury and loansharking limits).

**i.   The Merchant Agreement was a Disguised Loan**

37.   All Florida cases take a deep look as to the intention of the parties at the moment of making the contract: "Whether the parties intended to create a loan or a sale is key to a determination whether a purchase agreement is in fact a disguised loan." *Foster v. Weber*, 578 So. 2d 857, 858 (Fla. 5d DCA 1991).

38.   Obviously, the Courts look at the language and terms of the contracts, but "[a] transaction that is either entirely or partially in the form of a sale may be usurious when the intent is to make a loan of money for a greater profit than allowed by statute." See, e.g., *Griffin v. Kelly*, 92 So. 2d 515 (Fla. 1957).

39.   For example, in *Union Secur., Inc. v. Merchants' Trust & Sav. Co.*, 205 Ind. 127, 185 N.E. 150 (1933), discussed by the Florida Courts in *Indian Lake Estates, Inc. v. Special Invest., Inc.*, 154 So. 2d 883, (Fla 2d DCA 1963), the court stated that: "Stripped to the verbiage with which the parties have sought to clothe their transaction, the naked facts disclose that what they were doing was not a sale, but a loan, and that leases were turned over simply by way of security. The [seller] needed money and the [buyer] advanced it." *Id* at 137. In this case, even though the contract explicitly stated that it was a sale, looking at the entirety of the transaction, the court found otherwise. *Id.*

40. In the Merchant Agreement, Section 1.9 explicitly states that it is not a loan but a sale. However, the mere fact that it represents itself as a sale and not a loan is not enough. Courts look at the transactions as a whole.

> ii. **The Debtor's Substantial Recourse Against Collateral Makes the Transaction a Loan**

41. To constitute a true loan, "it is essential to provide for repayment absolutely and at all events or that the principal in some way be secured as distinguished from being put in hazard." *K9 Bytes*, 56 Misc.3d at 816 (quoting *Rubenstein v. Small*, 273 App.Div. 102, 104, 75 N.Y.S.2d 483 (1st Dept.1947)). "A loan of money involves an absolute agreement to return the sum borrowed at a future time." *Indian Lake Estates, Inc.* 154 So. 2d at 890.

42. "Where," as here, "a buyer of accounts receivable holds substantial recourse against the seller, thereby shifting all risk of non-collection on the seller, courts have routinely held the transaction to be a financing arrangement and not a sale." *In re Burm,* 554 B. R. 5,5 (D. Mass. 2016); *see also In re Qualia Clinical Service, Inc.,* 652 F. 3d 933, 943 (8th cir. 2011) (finding the purchase of receivables constituted a loan rather than a sale because the arrangement "shift[ed] all risk" onto the seller); *In re Siskey Hauling Co., Inc.,* 456 B. R. 597,607 (N.D. Ga. 2011) ("[Buyer's] recourse against the Debtor effectively transfers the risk of non-collection on Debtor. The Court therefore construes the transaction as a loan, not a sale."); *Major's Furniture Mart, Inc. v. Castle Credit Corp, Inc*., 602 F.2d 538, 546 (3d Cir.1979) ("It is apparent to us on the record none of the risks present in a true sale is present here."); *Blackford v. Commercial Credit Corp*., 263 F.2d 97, 106 (5th Cir. 1959) (finding that sale of receivables was a loan and not a sale where the provisions of agreement worked to "essentially guarantee [lender] that they will suffer no loss on the transaction."). Further, in order to avoid a charge of usury, the debtor would have to establish the advanced funds were at risk. *See Beausejour Corp., v. Offshores Development Co.,*

*Inc*. 802 F. 2d 1319 (11 Cr. 1986) (finding Florida precedent and Florida case law upon which precedent was based establishes that there must be a substantial risk of losing one's whole investment in order for the financing transaction to be exempted from the usury statute.).

43.     In the instant case, as with any loan, the Loan Amount had to be repaid with interest. Hillsborough was obliged to pay the Debtor fixed daily payments of $318.18 until all repayments totalled $42,000 (the "Usurious Return"). Hillsborough was even obliged to permit the Debtor to automatically debit the daily payments until the Usurious Return was paid in full. Failure to make any required payments constitutes a material breach under the Merchant Agreement, even if Hillsborough had no receivables and was unable to pay the debt.

44.     Additionally, Chukwueke personally guaranteed the loan, thereby removing all of the Debtor's risk of non-payment. If the Hillsborough's business failed or could not generate sufficient future receipts to pay the daily fixed repayment sum, it is a default under the agreement, and upon a default, Chukwueke was required to pay the Usurious Return. As such, the Debtor bore **<u>no risk</u>** in the transactions with the Defendant.

45.     Since there was no risk that the Debtor would not be paid, the Merchant Agreement was clearly a loan and not a purchase of sale of receivables.

### iii.    The Interest Rate was Criminally Usurious and Renders the Merchant Agreement Unenforceable

46.     The Loan Amount was $30,000.00. But the Defendants were obliged to repay the Debtor $42,000.00. The $12,000.00 difference represents a 28.6% interest rate, which exceeds the criminally usurious threshold of 25%. *See* Florida Statute Section 687.071(2).[5]

---

[5] (2) Unless otherwise specifically allowed by law, any person making an extension of credit to any person, who shall willfully and knowingly charge, take, or receive interest thereon at a rate exceeding **25 percent per annum** but not in excess of 45 percent per annum, or the equivalent rate for a longer or shorter period of time, whether directly or indirectly, or conspires so to do, shall be guilty of a misdemeanor of the second degree . . . .(Emphasis added).

47. Criminally usurious transactions are unenforceable in Florida. *See* Florida Statute Section 687.071(7) ("No extension of credit made in violation of any of the provisions of this section shall be an enforceable debt in the courts of this state."). For this reason, the Plaintiff cannot enforce the Defendants' obligations under the Merchant Agreement.

**(c)     The Plaintiff Will Not be Prejudiced by Vacating the Default**

48. Prejudice, in the context of a motion to vacate a default judgment, is "the loss of evidence, increased potential for fraud or collusion, or a substantial reliance upon the judgment." *JPMorgan Chase Bank, N.A. v. Pandolfelli (In re Pandolfelli)*, 2012 U.S. Dist. LEXIS 19223, 6-8 (D.N.J. Feb. 14, 2012); *see also Smith v. PAC Int'l Logistics Co. (In re Advanced Mktg. Servs.)*, 448 B.R. 321, 327-330 (Bankr. D. Del. 2011). The cost of enforcing a judgment later vacated and the delay in realizing satisfaction on a claim rarely serves to establish the degree of prejudice sufficient to prevent the opening of a default judgment. The loss of an advantageous position cannot be used to establish prejudice. *Smith v. PAC Int'l Logistics Co. (In re Advanced Mktg. Servs.)*, 448 B.R. 321, 327-330 (Bankr. D. Del. 2011).

49. The burden of proving prejudice is on the Plaintiff. *Smith v. PAC Int'l Logistics Co. (In re Advanced Mktg. Servs.)*, 448 B.R. 321, 327-330 (Bankr. D. Del. 2011) ("Here, the Plaintiff has not shown that he would be materially prejudiced if the default judgment is vacated.").

50. The Plaintiff will not be able to assert prejudice. Based on the bill of costs [ECF #21] that it filed with the Court, the Plaintiff has only spent $350.00 in litigating this proceeding. In contrast, the Plaintiff received $14,840.00 from Hillsborough, an amount which it should not have received.

51. Even if the $350.00 that the Plaintiff has spent is considered prejudice, the prejudice to the Defendants clearly outweighs the prejudice to the Plaintiff.

### (d) A Good Reason Exists for the Defendants' Failure to Respond to the Plaintiff's Complaint

52. The reason that the Defendants failed to respond to the Plaintiff's Complaint was due to the inaction of their previous lawyer, Mr. Saracco.

53. In addition, Chukwueke is a layman and his emails to Mr. Feldman dated January 24, 2020 and January 27, 2020 to Mr. Feldman, where he asked the latter to consider his letter as a response to the Complaint and to file it, shows that he never received competent legal representation.

54. Bankruptcy jurisprudence is replete with instances where lay persons with little knowledge of bankruptcy proceedings were accorded a less strict standard with regard to excusable neglect. *See* e.g. *Collezione Europa USA, Inc. v. Dugan (In re Rhodes, Inc.)*, Case Nos. 04-78434 through 04-78436, 2007 Bankr. LEXIS 4606 (Bankr. Ct. N.D. GA December 17, 2007) (court permitted late filing of claimant's proof of claim despite presumptive receipt of the claims bar date and confirmation of the debtor's plan of reorganization because, among other reasons, the claimant was an unsophisticated creditor); *In re Grand Union Co.*, 204 B.R. 864, 872 (Bankr. D. Del. 1997) ("It is reasonable to expect that the movants, unsophisticated claimants, upon receipt of the bar date notice, paid no attention to the notice since they could have easily believed that the same notice would have been sent to and received by their counsel."); *In re Crazy Eddie Sec. Litig.*, 906 F. Supp. 840, 846 (E.D.N.Y. 1995) (magistrate judge recommended the allowance of late filed proof of claims for unsophisticated creditor investors).

55. That a different standard is applicable between sophisticated and unsophisticated creditors was clearly stated in the case of *Grubb v. Pittsburgh Nat'l Bank (In re Grubb)*, 169 B.R. 341 (Bankr. W.D. Pa. 1994). In that case, Pittsburgh National Bank ("PNC") failed to file a proof of claim on or before the claims bar date. *Id.* at 343. When PNC eventually filed its claim, the

debtors objected. *Id*. The bankruptcy court disallowed PNC's claim and, in so doing, stated that PNC, as a sophisticated creditor "cannot claim the treatment due an unsophisticated creditor." *Id*. at 349.

56.   It is therefore clear that Chukwueke, and Hillsborough by extension, are entitled to a more lenient standard with regard to the application of bankruptcy procedures, such as vacating the default.

57.   Finally, when the Defendants received notice of the Default Final Judgment, they immediately sprung into action. The Default Final Judgment was entered on June 1, 2020. The Defendant has diligently sought to retain counsel and now files this Motion to Vacate the Default Judgment. This evidences no intent on the part of the Defendants to delay the proceedings.

## PRAYER FOR RELIEF

**WHEREFORE,** for the reasons set forth above, the Defendants request that this Court enter an order vacating the Default Final Judgment entered against them and granting any further relief that this Court deems appropriate.

Dated: June 12, 2020

Respectfully submitted,

**KANIUK LAW OFFICE, P.A**.
By: */s/ Ronald Scott Kaniuk*
Ronald Scott Kaniuk, Esq. (FBN 0112240)
1615 S. Congress Avenue, Suite 103
Delray Beach, FL 33445
Tel: (561) 292-2127
Email: **ron@kaniuklawoffice.com**